**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

              Plaintiff,

vs.                                   Case No. 3:12-CV-625-J-99TJC-JRK

CHRISTINA KULIK, as Personal
Representative of the ESTATE of RAQUELL
LYNCH; CHRISTINA KULIK as Personal
Representative of the Estate of K.L. (a minor);
VICTORIA LYNN LYNCH

              Defendants.
_____

## ORDER

      The Prudential Insurance Company of America originally filed this Complaint in

Interpleader to resolve a dispute between two competing claims for life insurance policy

benefits following the murder of two individuals covered by Servicemembers' Group Life

Insurance ("SGLI").  At issue is whether SGLI death benefits should be paid to the sole

remaining named beneficiary of the Policy, Victoria Lynn Lynch, or to the personal

representative of the victims' estates, Christina Kulik.  While Prudential, as stakeholder, has

deposited the insurance proceeds and been dismissed as a named party (Doc. 48), the

dispute between Victoria Lynch and Christina Kulik remains.  Before this Court are Kulik's

Motion for Summary Judgment and three memoranda in support of Kulik's Motion. (Docs.

10, 36, 45.)

I.      **Background**

Prudential provides group life insurance benefits to the United States Department of Veterans Affairs for servicemembers under the Servicemembers' Group Life Insurance Act ("SGLIA"), 38 U.S.C. § 1965, et seq. (Doc. 1 at ¶ 7.)   This policy also provides coverage on the lives of servicemembers' spouses and dependent children, who are automatically insured through the servicemember's policy.[1] The servicemember can list primary and contingent beneficiaries for the servicemember's coverage.   The servicemember is the automatic beneficiary of his spouse's and dependent children's coverage. If the servicemember dies or is disqualified from receiving proceeds before payment on a spouse's or dependent child's policy is due, the proceeds are paid to the beneficiary entitled to receive payment on the servicemember's own SGLI policy.[2]

---

[1] 38 U.S.C. § 1967(a)(1)(A)(ii).

[2] 38 U.S.C. § 1970(i) states that if a servicemember dies before payment on an insurable dependent's life can be made, the payment is made to the person who would receive the servicemember's insurance proceeds.   The Family SGLI Procedures Guide (http://benefits.va.gov/INSURANCE/fsgli_guide_part1.asp) provides that a servicemember is disqualified from receiving an insurable dependent's proceeds if he kills the insured dependent, and the next eligible beneficiary is determined under 38 U.S.C. § 1970(a). See also Morris v. Prudential Ins. Co. of Am., CIV.A. DKC 12-1946, 2013 WL 2370513, at *3 (D. Md. May 30, 2013) ("In the event that Specialist Goodwin [a servicemember] were disqualified and the benefit remained payable, the death benefit would be paid 'to the person or persons entitled to receive payment of the proceeds of insurance on the member's life[.]'" (quoting 38 U.S.C. § 1970(i)).  Prudential asserts in the Complaint that Victoria Lynch is the contingent beneficiary upon the death of Raquell and K.L. and the disqualification of Kip Lynch. (Doc. 1at ¶ 20.)  In her Motion for Summary Judgment, Kulik does not appear to dispute this but argues that the Slayer Statute disqualifies Victoria Lynch from receiving the proceeds of the Policy.

2

The Policy at issue here only expressly names Servicemember Kip Lynch as the insured, but his wife, Raquell Lynch ("Raquell"), and their eight month old daughter, K.L., are automatically insured.  Kip Lynch designated Raquell as the principal beneficiary of the SGLI Coverage.  (Exhibit D.) (Doc. 1 at ¶ 18.)  He designated his sister, Victoria Lynch, as the sole contingent beneficiary.  (Exhibit D.) (Doc. 1 at ¶ 18.)   Kip Lynch is assumed to be a beneficiary of the SGLI Coverage on Raquell's and K.L.'s lives.

On April 26, 2010, in Anchorage, Alaska, Kip Lynch shot and killed both Raquell and K.L.  As a result, the Policy's death benefits for Raquell and K.L. became due and payable in the total amount of one hundred ten thousand dollars ($110,000.00).  (Doc. 1 at ¶¶  10, 11.)   Kip Lynch was convicted of the murders of Raquell and K.L. and was thereby disqualified from receiving the benefits under the terms of the Policy[3] and under both Alaska law[4] and  Florida law.[5]   (Exhibit C.) (Doc. 1 at ¶¶ 12, 14.)   Because Kip Lynch was

_____

[3] The Department of Veterans Affairs Family SGLI Procedures Guide states that:
A servicemember is not entitled as beneficiary if he/she is convicted or pleads guilty to involvement in the death of the spouse or the dependent child.  See also Servicemembers' Group Life Insurance and Veterans' Group Life Insurance—Slayer's Rule Exclusion, 77 Fed. Reg. 60,304 (Oct. 3, 2012) (to be codified at 38 C.F.R. pt. 9).  This regulation was amended on October 3, 2012, and is applicable to any claim filed on or after November 2, 2012, and any claim filed before that date that has not been paid or denied as of that date.  Thus, it applies here.

[4] See Alaska Stat. Ann. § 13.12.803, which states, in relevant part:
The felonious killing of the decedent . . . revokes a revocable . . . disposition or appointment of property made by the decedent to the killer in a governing instrument.

[5] See Fla. Stat. Ann. § 732.802, which states, in relevant part:
732.802(3) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who unlawfully and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement; and it becomes payable as though the killer had predeceased the

disqualified, the next beneficiary in line to receive the decedents' benefits is the person entitled to receive Kip Lynch's benefits.  See supra note 2.  As the primary beneficiary under Kip's policy, Raquell, is deceased, the next eligible beneficiary is the contingent beneficiary, Victoria Lynch.

On May 26, 2010, Christina Kulik, Raquell's mother, became the Personal Representative of the estates of Raquell and K.L., who both died intestate. (Exhibits G & H.) (Doc. 1.) (Exhibits K & L.) (Doc. 10-1.)  On March 9, 2011, Victoria Lynch made a claim for the Policy's benefits as the contingent beneficiary of the Policy. (Exhibits E & F.)  (Doc. 1.) On June 3, 2011, Kulik made a competing claim for the benefits as Personal Representative. (Exhibits I & J.)  (Doc. 1.)  Prudential then filed this Complaint in Interpleader. (Doc. 1.)

Kulik submitted three Memoranda of Facts and Law seeking to eliminate Victoria Lynch's interest in the benefits.  (Docs. 10, 36, 45.)  Victoria Lynch has proceeded mostly pro se[6] and has submitted a letter to the Court indicating that she should receive the benefits because she was childhood friends with Raquell and regularly babysat K.L. (Doc. 27.)

_____

decedent.

[6] Attorney Margaret Zabijaka was appointed by the Court to represent Victoria Lynch pro bono for the purpose of assisting her with settlement discussions and served as her attorney in that capacity from November 30, 2012, to January 7, 2013, when the Court relieved her after settlement efforts were at an impasse.

II.     **Discussion**

Kulik's memoranda of law fail to address the relevant SGLI Regulations pertaining to issuance of the Policy benefits.  (Neither has Lynch provided any assistance.)  Instead, Kulik relies on Florida law and argues that because under Florida's Slayer Statute Kip Lynch is legally deemed to have predeceased Raquell and K.L., Raquell's and K.L.'s estates are entitled to the Policy's benefits rather than the contingent beneficiary named in the Policy.[7] Kulik also argues that Florida's Slayer Statute should exclude Victoria Lynch from receiving the benefits based on the crimes of her brother, Kip.  However, under both the SGLI Regulations and Florida law, Victoria Lynch remains entitled to the benefits.

A.     **The SGLI Regulations Do Not Preclude Victoria Lynch from Receiving the Benefits**.

Courts have long applied the principle that "no person shall be permitted to benefit from the consequences of his or her wrongdoing" to disqualify murderers from inheriting from their victims, whether the inheritance is through a will, an intestacy statute, or a life

---

[7] Federal SGLIA statutory law preempts inconsistent state laws.  Ridgway v. Ridgway, 454 U.S. 46, 60 (1981).  Federal regulations have the same preemptive effect as federal statutes.  Shuford v. Fidelity Nat. Property & Cas. Ins. Co., 508 F.3d 1337, 1344 (11th Cir. 2007) (citing Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982)). A conflict that would cause preemption occurs when compliance with both federal and state regulations is impossible, Hillman v. Maretta, 133 S. Ct. 1943, 1950 (2013) (citing Florida Lime & Avocado Growers, Inc. V. Paul, 373 U.S. 132, 142-43 (1963)), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hillman, 133 S. Ct. at 1950 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).  Here, as to the question of who receives the benefits, the SGLI Regulations and Florida law obtain the same result; therefore the Court need not undertake further preemption discussion.

insurance policy. <u>Prudential Insurance Company of America v. Athmer</u>, 178 F.3d 473, 475-76 (7th Cir. 1999) (citing <u>Mutual Life Ins. Co. v. Armstrong</u>, 117 U.S. 591, 600 (1886); <u>Riggs v. Palmer</u>, 115 N.Y. 506 (N.Y. 1889); <u>Swietlik v. United States</u>, 779 F.2d 1306 (7th Cir. 1985)). The SGLI Regulations adopt this common law slayer's rule and extend its reach to the slayer's family members who are not also related to the victim by blood, adoption, or marriage. According to 38 C.F.R. § 9.5(e)(1) and (e)(2)(i), anyone convicted of intentionally and wrongfully killing the decedent is not entitled to the decedent's SGLI proceeds.[8] In addition, under § 9.5(e)(1) and (e)(2)(iii) a member of the family of a slayer "who is not related to the decedent by blood, legal adoption, or marriage" is also not entitled to the decedent's SGLI proceeds. Section 9.1(l) defines a "member of the family" who would be disqualified under § 9.5(e)(1) and (e)(2)(iii) as someone with one of the following relationships to the slayer: spouse; biological, adopted, or step child; biological, adoptive, or step parent; biological, adopted, or step sibling; or biological, adoptive, or step grandparent or grandchild. Under § 9.5(e)(4)(i), once a slayer (or slayer's family member) is disqualified, payment is made to the next eligible listed beneficiary, then to the widow or widower (and so on, in the same order as prescribed by 38 U.S.C. § 1970(a)).

The term "related by marriage" is not defined in the SGLI Regulations.[9] <u>Black's Law</u>

---

[8] <u>See</u> <u>supra</u> note 3.

[9] In a different section within Title 38 (dealing with Vocational Rehabilitation and Education for veterans), 38 C.F.R. § 21.374 states that "VA will not pay the attendant a fee if he or she is a relative of the veteran. A relative, for this purpose, is a person who by blood or marriage is the veteran's (i) Spouse, (ii) Parent, (iii) Child, (iv) Brother, (v) Sister, (vi) Uncle, (vii) Aunt, (viii) Niece, or (ix) Nephew." This, however, does not define "related by

Dictionary defines "in-law" as "a relative by marriage." Florida courts have interpreted the term "related by marriage" to include sibling-in-law relationships. See Gilligan v. Liberty Mut. Ins. Co., 265 So. 2d 543, 545 (Fla. 4th DCA 1972) (finding that insured's brother-in-law was related to the named insured by marriage for purposes of automobile insurance policy); Sharpe v. Sharpe, 695 So. 2d 1302, 1304 (Fla. 5th DCA 1997) (finding that widow was related by marriage to her deceased husband's brother, which would make her a relative by marriage under statutes pertaining to domestic violence injunctions, §§ 741.30 and 741.82 Fla. Stat.). Furthermore, outside of statutory interpretation, courts refer to siblings-in-law as being "related by marriage." See, e.g., Dill v. Allen, 488 F.3d 1344, 1352 (11th Cir. 2007) (stating that petitioner's sisters-in-law were related to him by marriage).[10]

_____

marriage," and the definition it does provide is expressly limited to the provision at hand.

Federal regulations in other titles of the Code do not define "related by marriage" consistently. In Title 7, for Farm Loan Program purposes, "[r]elated by blood or marriage is being connected to one another as husband, wife, parent, child, brother, sister, uncle, aunt, or grandparent." 7 C.F.R. § 761.2. Title 10 uses a different definition: in the section dealing with payment of travel expenses, "relative means . . . an individual who is related to the employee by blood, marriage, or operation of law, as father, mother, son, daughter . . . . nephew, niece . . . brother-in-law, sister-in law." 10 C.F.R § 1060.501.

[10] In its Proposed Rule, the Department of Veterans Affairs cites Prudential Ins. Co. of Am. v. Tolbert, 320 F. Supp. 2d 1378 (S.D. Ga. 2004) to support the proposal that the SGLI slayer rule also exclude family members of the slayer who are not also related to the decedent. Servicemembers' Group Life Insurance and Veterans' Group Life Insurance—Slayer's Rule Exclusion, 76 Fed. Reg. 77,455 (Dec. 13, 2011) (to be codified at 38 C.F.R. pt. 9). In Tolbert, the court precluded the decedent's in-laws (slayer's mother and brother) from receiving the decedent's death benefits. Thus, under Tolbert, Victoria Lynch would be precluded from receiving the benefits. However, in 38 C.F.R. § 9.5(e), the Department of Veterans Affairs included those related to the decedent "by marriage" in the safe harbor for family members of the slayer who are also related to the decedent and thus not subject to the slayer rule. The Court finds the actual language of the Rule more

Under the SGLI Regulations, Kip Lynch's family members are precluded from receiving the benefits unless they are related to decedents Raquell and K.L by "blood, legal adoption, or marriage."  While Victoria Lynch is not related to Raquell by blood or legal adoption, she is related to Raquell by marriage, as they are sisters-in-law.  Victoria Lynch is also related to K.L. since she is her aunt by blood.  Thus, Victoria Lynch falls within the safe harbor created by § 9.5(e)(2)(iii) for individuals who, while related to the slayer, are also related to the decedent.  As the only contingent beneficiary listed, she is the next eligible beneficiary under 38 C.F.R. §  9.5(e)(4) and should receive the benefits.

**B.     Florida's Slayer Statute Does Not Preclude Victoria Lynch from Receiving the Benefits.**

Even if the SGLI Regulations did not apply, the result under Florida law would be the same.  Kulik argues that 1) because Florida's Slayer Statute treats the killer as having predeceased the decedent, the benefits pass to the intestate estate, and 2) Florida's Slayer Statute not only precludes Kip Lynch from benefitting from the murder but also extends to disqualify his sister from receiving the benefits.  Florida case law does not support Kulik's interpretation of the Slayer Statute.  When the slayer is treated as having predeceased the victim, insurance proceeds pass to the next beneficiary in line, not the estate, and Florida

---

expressive of the Department of Veterans Affairs's intent than the case cited in its Proposed Rule.  Given the cases above where "related by marriage" refers to in-laws, the Court concludes that the extended slayer rule in 38 C.F.R. § 9.5(e) does not preclude in-laws of the decedent who are also related to the slayer from receiving the decedent's death benefits.

courts have not extended the Slayer Statute to family members of the killer.

**1. Under Florida's Slayer Statute, Insurance Proceeds Pass to the Contingent Beneficiary if a Slayer is Disqualified.**

Kulik argues that because Kip Lynch is deemed to have predeceased Raquell and K.L., Raquell's and K.L.'s estates are entitled to the death benefits.  Kulik relies on Fla. Stat.§ 732.802(1) which states that:

> A surviving person who unlawfully and intentionally kills or participates in procuring the death of the decedent is not entitled to any benefits under the will or under the Florida Probate Code, and the estate of the decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.

732.802(3) states that:

> A named beneficiary of a bond, life insurance policy, or other contractual arrangement who unlawfully and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement; and it becomes payable as though the killer had predeceased the decedent.

Kulik argues that if Kip Lynch had actually predeceased Raquell and K.L., Raquell would be entitled to the SGLI death benefits on his life.  (Doc. 10-1 at paragraph ¶ 7.)  Since Raquell is deceased, Kulik argues the SGLI death benefits pass to her estate, citing Fla. Stat. §§ 732.101(1) and 732.102.

This argument confuses Kip Lynch's life insurance coverage with that of Raquell and K.L.  If Kip Lynch had actually predeceased his wife and child, they would have been entitled to his SGLI death benefits, not their own SGLI death benefits.  Kip Lynch is not dead, so his

9

SGLI proceeds are not at issue.  When an insurance policy "becomes payable as though the killer had predeceased the decedent" under Fla. Stat. § 732.802(3), the killer is simply removed from consideration and the proceeds are paid to the next listed contingent beneficiary.  For example, in Prudential Ins. Co. of America, Inc. v. Baitinger, a man who had murdered his wife "was entitled to no benefits under the policy, and the policy became payable as though he had predeceased his wife." 452 So. 2d 140, 143 (Fla. 3d DCA 1984). The insurance proceeds were thus "payable to any alternative beneficiaries designated in the policy . . . or absent such designation, to the decedent's estate." Id. (citing Carter v. Carter, 88 So. 2d 153, 160 (Fla. 1956),  which states that when a slayer is disqualified, the intent of the insured should be given effect and proceeds should be paid to the "beneficiary first in priority who is eligible under the law to receive the money").  Thus, by operation of law, the killer is disqualified from receiving the victim's death benefits and the next eligible beneficiary listed in the policy receives those benefits.  Here, that next eligible beneficiary is Victoria Lynch.

### 2. Florida's Slayer Statute Does Not Extend to Innocent Family Members of the Slayer.

Kulik also argues that Florida's Slayer Statute extends to Victoria Lynch and precludes her from receiving the SGLI death benefits, since she could use the proceeds to benefit her brother, the murderer.  The Slayer Statute does not explicitly preclude family members of slayers from receiving victims' property or insurance proceeds, and Florida courts have declined to extend the statute to innocent beneficiaries.

10

In In re Estate of Benson, the Second District Court of Appeal refused to extend the Slayer Statute to a slayer's family members. 548 So. 2d 775 (Fla. 2d DCA 1989).  An adult son murdered his mother and one of his two adult siblings.  Under the mother's will, two heirs remained: the slayer and the surviving sibling.  At issue was whether the slayer's children could inherit as if the slayer had predeceased his victims or whether the slayer's line of succession should be severed along with the slayer's.  The Second District Court of Appeal was very clear:

> We have no difficulty in rejecting appellant's contention that there exists a public policy in Florida that would extend Florida's Slayer Statute so as to disinherit the natural and/or statutory heirs of a killer who except for his murderous act would have been a beneficiary of his victims' estates. We find the statutory language clear and unambiguous. If there is to be declared in Florida such a public policy as appellant urges, it must be accomplished by a legislative amendment to the Slayer Statute and not by a pronouncement of this court. . . . . It is difficult to advance a credible argument as to any ambiguity in the statute or how the legislature could have more clearly spoken.  It is the "surviving person *who … kills*" who is prohibited from benefitting from the act of the killing.

Id. at 777.  In Benson, the slayer's innocent children were allowed to collect not only through the slain mother's will, but also from the intestate estate of the slain sibling.  Id. at 778.  See also Lopez v. Rodriguez, 574 So. 2d 249, 250 (Fla. 3d DCA 1991) ("We decline to hold that the legislature intended the statute [Fla. Stat. § 732.802] to deprive an innocent beneficiary of the trust proceeds.").

The cases cited by Kulik do not advance her argument that Florida's Slayer Statute eliminates Victoria Lynch as a proper beneficiary.  Instead, a majority of the cases cited in her memoranda deal only with the application of the Slayer Statute, Fla. Stat. § 732.802, as to the slayer himself and do not address the extension of the Slayer Statute that Kulik is

11

seeking here.  Baitinger, 452 So. 2d 140 (holding that, despite pending appeal, beneficiary's conviction for the first degree murder of insured was conclusive for purposes of determining his interest in the proceeds of the policy which covered insured's life; thus, proceeds were payable to any alternative beneficiaries designated in the policy or to the decedent's estate if there were no alternative beneficiaries); Barber v. Parrish, 963 So. 2d 892 (Fla. 1st DCA 2007) (holding that trial court's adjudication of guilt is the "final judgment of conviction" even if appellate remedies have not been exhausted); American United Life Ins. Co. v. Barber, No. 3:05-cv-266-J-32JRK, 2008 WL 1766916 (M.D. Fla. May 7, 2008) (also holding that trial court's adjudication of primary beneficiary's guilt was conclusive evidence of guilt, so contingent beneficiary was rightfully entitled to insurance proceeds); In re Estate of Howard, 542 So. 2d 395 (Fla. 1st DCA 1989) (concluding that clear and convincing evidence had established that the defendant unlawfully and intentionally killed her husband, which thereby excluded her from inheriting under Florida's Slayer Statute regardless of her being acquitted in the criminal prosecution).  Each of these cases, as applied to this case, addresses an undisputed issue under Florida law: Kip Lynch, who killed his wife and child, is not entitled to any benefit under the Policy.  These cases do not suggest that Victoria Lynch, the innocent sister of Kip, is similarly deprived of that right.

Kulik also cites Rolling v. State to support her contention that Florida law prohibits a killer or anyone in a special relationship with the killer to benefit from the homicide.  741 So. 2d 627 (Fla. 1st DCA 1999).  This case is not on point, as it does not deal with the Florida Slayer Statute.  The statute at issue in Rolling, Fla. Stat. § 944.512, imposes a lien on any

proceeds received from memorabilia commemorating a crime to prevent felons from profiting from promotion of their crime.  Unlike the Slayer Statute, Fla. Stat. § 944.512 explicitly extends the lien to someone receiving financial benefits "on her or his [the felon's] behalf."  Thus, <u>Rolling</u> is inapposite.

## III.  <u>Conclusion</u>

After a careful review of the Complaint, Kulik's Motion for Summary Judgment and additional memoranda, the SGLI Regulations, and Florida law, the Court finds that there is no legal basis to interfere with the right of Victoria Lynch, the sister of the killer, the sister-in-law of the adult decedent, and the aunt of the child decedent, to collect as sole remaining named beneficiary of the Policy.

While Lynch did not file a motion for summary judgment per se, the Court permitted her to rely on authorities supplied by her former counsel as a response to Kulik's Motion for Summary Judgment.  Having now analyzed what is a purely legal issue, the Court has determined that the law supports entry of judgment in favor of Victoria Lynch.  However, pursuant to Fed. R. Civ. P. 56(f), before entering judgment in her favor, the Court will permit Kulik a final opportunity to be heard.  Following review of any further submission by Kulik, the Court will make a final decision.

Accordingly, it is hereby

     **ORDERED**:

     Counterclaimant Kulik's Motion for Summary Judgment (Doc. 10) is **DENIED**.  No later than August 23, 2013, Kulik may file any further response in opposition to entry of judgment in favor of Victoria Lynch.  The Court will then enter an appropriate final judgment.

     **DONE AND ORDERED** at Jacksonville, Florida this 31st day of July, 2013.

 

 

TIMOTHY J. CORRIGAN
United States District Judge

Copies:

pro se parties
counsel of record

14